UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOSEPH ALEXANDER PESCI, IV,

               Plaintiff,                                 Hon. Gordon J. Quist

v.                                               Case No. 1:14-cv-220

NILES, CITY OF, et al.,

               Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>. (Dkt. #91). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted in part and denied in part** as detailed herein.


## BACKGROUND

The following allegations are contained in Plaintiffs' First Amended Complaint. (Dkt. #14). On March 17, 2011, Ivery Cross, who at that time was employed as a Police Officer for the City of Niles Police Department, effected a traffic stop on Plaintiff. (Dkt. #14 at ¶¶ 1, 65-68). After gaining consent to search Plaintiff's vehicle, Cross discovered a "minute amount" of marijuana. (Dkt. #14 at ¶¶ 69-71). Cross then arrested Plaintiff and transported him to the City of Niles Police Department where he was placed in a holding cell. (Dkt. #14 at ¶ 72-73).

Sometime later, Cross escorted Plaintiff from the holding cell to an adjacent "common area." (Dkt. #14 at ¶¶ 74-75). Cross then began "to taunt" Plaintiff "by asking him what he was willing

to do [to] get out of being charged for the crime of possession of marijuana." (Dkt. #14 at ¶ 77). Cross also threatened to charge Plaintiff with the additional crime of possession of marijuana with the intent to distribute. (Dkt. #14 at ¶ 77). Cross then "ordered" Plaintiff into an adjacent bathroom where he forced Plaintiff to perform "obscene and grotesque acts of a sexual nature." (Dkt. #14 at ¶¶ 78-80). Cross obtained Plaintiff's compliance by telling Plaintiff that his "bodily fluids were needed to analyze the crime" and, moreover, that by performing the acts in question his "punishment for possessing marijuana would be lessened." (Dkt. #14 at ¶ 81). Following this incident, Cross returned Plaintiff to the holding cell. (Dkt. #14 at ¶ 82).

Approximately 45 minutes later, Cross escorted Plaintiff from the holding cell to an adjacent common area where he again asked Plaintiff "what he was willing to do [to] get out of being charged for the crime of possession of marijuana." (Dkt. #14 at ¶ 84). Cross then "ordered" Plaintiff into an adjacent bathroom where he again forced Plaintiff to perform "obscene and grotesque acts of a sexual nature." (Dkt. #14 at ¶¶ 85-86). Cross then "physically assaulted [Plaintiff] after forcing [him] to remove his clothes."[1] (Dkt. #14 at ¶ 87). Cross then returned Plaintiff to the holding cell where he remained until being released from custody approximately two hours later. (Dkt. #14 at ¶ 88).

Plaintiff initiated the present action on March 6, 2014, against the City of Niles, Ivery Cross, Richard Huff, and five other individuals alleging that he suffered violations of his Fourth and Fourteenth Amendment rights. Many of Plaintiff's claims have since been dismissed. At this juncture,

---

[1] Cross acknowledged in his deposition that he twice "asked" Plaintiff to masturbate for him in the bathroom. (Dkt. #92, Exhibit A at 113-15). Because the parties submitted only brief portions of Cross' deposition testimony, it is unclear whether Cross acknowledged sexually assaulting Plaintiff.

the only defendants remaining in this action are Former Chief of Police Huff, the City of Niles, and Ivery Cross.[2] Defendants Huff and the City of Niles now move for summary judgment.

## LEGAL STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the

---

[2] Default has been entered against Cross. (Dkt. #105). While Plaintiff has moved for entry of default judgment against Cross, Plaintiff has also requested that the Court delay resolution of this matter. (Dkt. #110, 124-25).

material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the*

*Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."  *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

### I.        Plaintiff has Sufficiently Pled Violation of his Fourth Amendment Rights

As noted above, in his amended complaint Plaintiff alleges that Ivery Cross twice ordered him into a bathroom where he forced Plaintiff to perform "obscene and grotesque acts of a sexual nature."  Plaintiff alleges that following this second incident Cross "physically assaulted" him.  However, Plaintiff did not allege that he was subjected to a strip search by Ivery Cross.  In response to the present motion for summary judgment, Plaintiff argues that he was, in fact, subjected to an unlawful strip search, conducted by Ivery Cross, prior to the aforementioned bathroom incidents.  (Dkt. #112 at PageID# 1426-29, 1435-36, 1441-44).  Defendants assert that "the strip search issue is not part of this lawsuit."  (Dkt. #92 at PageID# 887).  Plaintiff responds that his amended complaint is sufficient in this regard.  (Dkt. #112 at PageID# 1442 n.4).

Plaintiff alleges in his amended complaint that the aforementioned bathroom incidents violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

Plaintiff's allegations of what occurred in the bathroom certainly implicate his Fourteenth Amendment

rights. *See Leary v. Livingston County*, 528 F.3d 438, 443 (6th Cir. 2008) (excessive force claims

brought by a pretrial detainee are analyzed under the Due Process Clause of the Fourteenth Amendment

which protects such persons "from the use of excessive force that amounts to punishment"). These

particular allegations do not, however, implicate Plaintiff's Fourth Amendment rights. *See Burgess v.

Fischer*, 735 F.3d 462, 472 (6th Cir. 2013) (noting that excessive force claims asserted by "free citizens"

are properly asserted under the Fourth Amendment, whereas excessive force claims asserted by "pretrial

detainees" are properly asserted under the Fourteenth Amendment).

On the other hand, claims that a detainee was subjected to an unlawful strip search clearly

implicate the Fourth Amendment. *See, e.g., Stoudemire v. Michigan Department of Corrections*, 705

F.3d 560, 571-72 (6th Cir. 2013). Thus, while Plaintiff did not expressly allege the factual basis for his

Fourth Amendment claim, he did clearly allege that Cross violated his Fourth Amendment rights, a

violation which was not implicated by the allegations regarding the aforementioned bathroom incidents.

To the extent that Plaintiff's amended complaint failed to sufficiently articulate facts in support of his

Fourth Amendment claim, Defendants could have moved to dismiss such under Federal Rule of Civil

Procedure 12(b)(6). Defendants failed to do so. Defendants could likewise have moved Plaintiff to

provide a more definite statement of the basis for his allegation that he suffered a violation of his Fourth

Amendment rights. *See* Fed. R. Civ. P. 12(e). Defendants chose not to do so.

Simply put, Plaintiff alleges in his amended complaint that he suffered a violation of his

Fourth Amendment rights, but failed to adequately articulate the facts underlying such. Plaintiff now

requests that he be permitted to amend his complaint to conform to the evidence revealed through the

discovery process. The Court finds that Defendants will not be prejudiced by the requested amendment

as such accomplishes nothing more than to articulate the factual basis for a claim already asserted.[3] Accordingly, the undersigned recommends that Plaintiff be permitted to amend his complaint to more specifically allege the basis for his claim that he suffered a violation of his Fourth Amendment rights.

Furthermore, Defendants' argument that Plaintiff's Fourth Amendment claim is foreclosed by the Supreme Court's decision in *Florence v. Board of Chosen Freeholders of County of Burlington*, 132 S.Ct. 1510 (2012), is unpersuasive. In *Florence*, the Court was asked to assess the Constitutionality of a blanket policy requiring that all prisoners be subjected to a strip search "prior to their admission to the general population." *Id.* at 1513-15. While the Court found the policy in question to be constitutional, the Court also explicitly stated that, "[t]his case does not require the Court to rule on the types of searches that would be reasonable in instances where, for example, a detainee will be held without assignment to the general jail population and without substantial contact with other detainees." *Id.* at 1518-23.

Thus, the *Florence* decision hardly supports the principle that strip searches are always permitted regardless the circumstances and alleged rationale for such. As the Sixth Circuit recently observed, the *Florence* Court, "far from recanting the principle that 'the need for a particular search must be balanced against the resulting invasion of personal rights,' in fact reiterated it" and . . ."took pains to emphasize that its holding applied only to the blanket policy before it." *Williams v. City of Cleveland*, 771 F.3d 945, 950-51 (6th Cir. 2014).[4] Plaintiff alleges that he was housed in a segregated cell rendering

---

[3] Defendants were clearly aware of the allegations that Plaintiff had been subjected to a strip search as he was questioned in detail about such in his deposition.

[4] The Court further notes that the *Florence* decision was not issued until after the conduct at issue in this case. To the extent Defendants look to pre-*Florence* law for support, such appears to offer little support. *See, e.g., T.S. v. Doe*, 742 F.3d 632, 636-37 (6th Cir. 2014) (recognizing that prior to the *Florence* decision, the law in the Sixth Circuit was that jail officials "must. . .screen out detainees from a blanket strip-search policy based upon the seriousness of their offense").

*Florence* inapplicable.  Thus, the question becomes whether the search in question was reasonable under the circumstances.  On this question, Ivery Cross and Plaintiff offer very different versions of events.  Plaintiff's testimony on this matter, if believed, would support a finding that his Fourth Amendment rights were violated.  Accordingly, the undersigned concludes that Defendants are not entitled to relief, at this juncture, on Plaintiff's Fourth Amendment claim.

## II.        Plaintiff's Claims Against Defendant Huff in his Personal Capacity

Plaintiff has sued Defendant Huff in both his personal and official capacities.  Liability as to Defendant Huff, in his personal capacity, cannot be premised solely on Huff's position as Chief of Police or his ability to supervise others.  *See, e.g., Heyerman v. County of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012).  To hold Defendant Huff personally liable in this matter, Plaintiff must establish that Huff "either encouraged the specific incident of misconduct or in some other way directly participated in it."  *Id.*

Plaintiff does not allege, nor is there evidence, that Defendant Huff encouraged or participated in the specific instances of misconduct which form the basis for this action.  Accordingly, Defendant Huff is entitled to summary judgment as to Plaintiff's personal capacity claims.  *Id.* at 647-48 (an attempt by a plaintiff to hold an individual personally liable for an alleged failure to supervise subordinates or for enacting a policy that allegedly violated his rights, "improperly conflates a § 1983 claim of individual supervisory liability with one of municipal liability").  Plaintiff's claims against Defendant Huff in his official capacity are properly considered as claims against the City of Niles.  *See Miller v. Calhoun County*, 408 F.3d 803, 817 n.3 (6th Cir. 2005) (where plaintiff sued individuals in

their official capacity concerning incidents in which they had no personal involvement, "we treat the claims against them as being claims against the County").

III.        **Municipal Liability Claims**

Plaintiff's remaining claims, against Defendant Huff in his official capacity and the City of Niles, are all properly characterized as municipal liability claims (i.e., claims in which Plaintiff seeks to hold a municipality liable for the acts of one of its employees). Specifically, Plaintiff seeks to hold Defendant Huff, in his official capacity, and the City of Niles liable for the violations of his Fourth and Fourteenth Amendment rights he allegedly suffered. Accordingly, the Court will articulate the general standard applicable to such claims and then separately analyze each of the claims in question.

A.        Municipal Liability Standard

Plaintiff asserts this action pursuant to 42 U.S.C. § 1983 which provides, in relevant part, that "[e]very person who," under color of law, "subjects, or causes to be subjected, any [person] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. A municipality or other entity of local government may be held liable under § 1983 if "the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Governmental entities, however, "are not vicariously liable under § 1983 for their employees' actions," but instead can only be held liable for "their own illegal acts." *Id.* To impose liability on a governmental entity, the plaintiff "must prove that action pursuant to official municipal policy caused their injury." *Id.* at 60-61. In this context, official municipal policy "includes the decisions of a

-9-

government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* at 61.

B.     Failure to Train and Failure to Supervise

In Count III of his amended complaint, Plaintiff alleges that Defendants Huff and the City of Niles failed to adequately train or adequately supervise Ivery Cross.   At hearing, Plaintiff stated that he was withdrawing his failure to train claim.   Accordingly, the Court will disregard Plaintiff's failure to train claim and focus on his failure to supervise claim.

To prevail on a failure to supervise claim, Plaintiff "must show that the city acted with 'deliberate indifference' to the risk of [the constitutional violation] and that its deliberate indifference was the 'moving force' behind the [constitutional violation]." *Amerson v. Waterford Twp.*, 562 Fed. Appx. 484, 492 (6th Cir., Apr. 15, 2014).   While it is a close call, the Court finds that the record contains sufficient evidence, which viewed in a manner most favorable to Plaintiff, would permit a reasonable juror to conclude that Defendants Huff and the City of Niles acted with deliberate indifference.

1.     Incident with Russell Frantz

In the early morning hours of September 16, 2009, Ivery Cross arrested Russell Frantz for possession of marijuana.   (Dkt. #92, Exhibit P).   Frantz was soon thereafter taken to a medical facility, apparently because he indicated that he had recently ingested both alcohol and drugs.[5]   There appears to be a significant dispute regarding what occurred during this incident, but interpreting the evidence in a light most favorable to Plaintiff establishes the following.   After Frantz arrived at the

---

[5]  The Court notes that the record concerning this incident has not been particularly well developed by either party.

medical facility he voluntarily provided a blood sample.  (Dkt. #92, Exhibit M at 35).  Frantz was then instructed that he needed to provide a urine sample.  (Dkt. #92, Exhibit M at 35).  When Frantz was unable to urinate, he was told that he would have a catheter inserted into his penis.  (Dkt. #92, Exhibit M at 34-35, 43-46).  Frantz did not consent to this procedure, believing that providing a blood sample was sufficient, at which point Cross physically assaulted Frantz so as to obtain his compliance.  (Dkt. #92, Exhibit M at 34-35, 43-46).

The purpose underlying the catheterization of Frantz is not clear.  Defendants have not identified any admissible evidence[6] indicating that catheterization was medically necessary.  Defendants have likewise not identified any evidence that Ivery Cross (or anybody else) obtained a warrant authorizing the forced catheterization of Frantz or that obtaining a warrant was impractical due to medical emergency or other exigency.  It should have been obvious to Cross, as well as his supervisors, that forcibly subjecting an individual to catheterization in the absence of a search warrant or the existence of circumstances excusing the absence of a warrant violates the Fourth Amendment.  *See, e.g.,* *Schmerber v. California*, 384 U.S. 757, 770 (1966) ("absent an emergency," a search warrant must be obtained prior to performing "intrusions into the human body").

2.      Strip Search Policy

Plaintiff asserts that during the relevant time period, the City failed to implement an appropriate strip search policy, failed to adequately train officers regarding how to lawfully and

---

[6] In his deposition, Ivery Cross appears to suggest that the catheterization was medically necessary because Frantz refused to provide a blood sample.  (Dkt. #92, Exhibit A at 75-77).  This evidence, however, suffers from two shortcomings: (1) to the extent Cross is relating what a nurse or other care provider stated, such is hearsay; and (2) even if it is assumed that Frantz refused to provide a blood sample such does necessarily not make the catheterization medically necessary.

appropriately conduct strip searches, and failed to ensure that officers were conducting strip searches in accordance with policy and Michigan law.

The parties have submitted two differing versions of the written policy regarding strip searches that the City of Niles allegedly had (or has) in place. Defendants have submitted the policy they allege was in effect as of March 17, 2011, the date Ivery Cross arrested Plaintiff. (Dkt. #92, Exhibit AA). Plaintiff has submitted what appears to be an amended strip search policy that he asserts was put into effect following the events of March 17, 2011. (Dkt. #113, Exhibit 8). While neither party has cited to evidence supporting these assertions, the parties reiterated at hearing that such is the case. Accordingly, the Court has assumed for present purposes that the policy submitted by Defendant was in effect as of March 17, 2011, and that the policy submitted by Plaintiff was put into effect some time after the events in question.

The strip search policy in effect as of March 17, 2011, appears to have been copied directly from the relevant Michigan statute, Mich. Comp. Laws § 764.25a, regarding strip searches. Notably, the statute provides that:

(2)     A person arrested or detained for a misdemeanor offense, or an offense which is punishable only by a civil fine shall not be strip searched unless both of the following occur:

(a)     The person arrested is being lodged into a detention facility by order of a court or there is reasonable cause to believe that the person is concealing a weapon, a controlled substance, or evidence of a crime.

(b)     The strip search is conducted by a person who has obtained prior written authorization from the chief law enforcement officer of the law enforcement agency conducting the strip search, or from that officer's designee; or if the strip search is conducted upon a minor in a juvenile detention facility which is not operated by a law enforcement agency, the strip search is conducted by a person who has obtained prior written authorization from the chief administrative officer of that facility, or from that officer's designee.

(Mich. Comp. Laws § 764.25a(2)).[7]

While there is no dispute that Ivery Cross arrested Plaintiff on March 17, 2011, it is not clear from the record (or the parties' arguments) precisely what Plaintiff was charged with upon his arrest.  It appears that Plaintiff was charged with a minor traffic offense and possession of marijuana, both of which appear to be misdemeanors under Michigan law.  (Dkt. #92, Exhibit A at 107).  The Court has proceeded as if such is the case which makes section (2) of the statute and policy applicable.

Cross testified that he conducted a strip search of Plaintiff because Plaintiff was "making a lot of assertive movements" and acting "nervous" which led Cross to suspect that Plaintiff may have been hiding drugs on his person.  (Dkt. #92, Exhibit A at 145-46).  While this may very well have satisfied subsection (2)(a) of the aforementioned provision, there is no indication that Cross obtained pre-approval to perform a strip search of Plaintiff.  As noted above, failure by Cross to obtain the necessary pre-approval (assuming Plaintiff had been arrested for a misdemeanor) would constitute a violation of Michigan law.  Mich. Comp. Laws § 764.25a(6).  Michigan law also requires that when a strip search is conducted, "the arresting officer shall prepare a report of the strip search."  Mich. Comp. Laws § 764.25a(4).  Plaintiff asserts that Cross never completed a report of this strip search.  Defendants have presented no evidence disputing this assertion.

Thus, interpreting the evidence in a manner most favorable to Plaintiff demonstrates that Ivery Cross' strip search of Plaintiff was conducted in violation of Michigan law and, as noted previously, possibly in violation of the Fourth Amendment.  Additional evidence of record supports the conclusion that this failure to properly conduct strip searches was, rather than an isolated incident,

---

[7] The policy in effect as of March 17, 2011, was identical to the statute except that the policy omitted the latter clause (concerning juveniles) contained in subsection (b).

standard practice for Cross if not the entire City of Niles police force.  For example, at his deposition, Cross testified that he was not aware of the existence of any written policy regarding strip searches. (Dkt. #113, Exhibit 1 at 97-98).  Cross testified that he believed that whether to conduct a strip search was instead left to his discretion.  (Dkt. #113, Exhibit 1 at 97-98).  Plaintiff argues that records of Plaintiff's field training demonstrate that Plaintiff was not required to document (as required by Michigan law and purported City of Niles policy) when strip searches were conducted.  (Dkt. #113, Exhibit 6).  Defendants have presented no evidence refuting this assertion.  Finally, Defendant Huff conceded, in his deposition, that he was unable to determine or assess whether individual officers were conducting strip searches in compliance with Michigan law and City of Niles policy.  (Dkt. #113, Exhibit 2 at 57-61).

### 3.      Holding Cell Policy

Plaintiff has presented evidence that during the relevant time period, the policy or custom of the City of Niles Police Department was to permit officers to unilaterally or individually remove detainees from their cells and transport them throughout the facility. (Dkt. #113, Exhibit 2 at 49-50; Dkt. #113, Exhibit 4 at 46-48; Dkt. #113, Exhibit 5 at 50-54).  Plaintiff has submitted expert witness evidence indicating that permitting a lone officer to remove detainees from their cells and transport them throughout the facility is contrary to "accepted practice."  (Dkt. #113, Exhibit 23).  Plaintiff has also presented evidence that such is contrary to National Law Enforcement Policy Center "model policy." (Dkt. #113, Exhibit 25).  Defendant does not appear to have presented evidence refuting these two items of evidence or presented other evidence suggesting that the policy or custom in question is considered acceptable by any individual or organization.

4.    Other Misconduct by Ivery Cross

a.    Writing Bad Checks

On December 27, 2009, Captain James Millen with the City of Niles Police Department was contacted by Dave Singh, a local business owner, concerning a complaint regarding Ivery Cross. (Dkt. #92, Exhibit L). Singh indicated to Millen that between September 30, 2009, and October 29, 2009, Cross wrote four checks to Singh's business totaling $1,153.27, all of which were returned to Singh unpaid. (Dkt. #92, Exhibit L). As part of his investigation into the matter, Millen spoke with Cross who acknowledged the accuracy of Singh's allegations. (Dkt. #92, Exhibit L). Millen informed Singh that "he was well within his right to file a criminal complaint regarding this matter," but Singh declined, stating that he "just wanted to be compensated for the checks." (Dkt. #92, Exhibit D at 43-44; Dkt. #92, Exhibit L). Cross was directed to repay to Singh $1,193.27 (the amount of the four checks plus $10 service fee for each). (Dkt. #92, Exhibit L).[8]

b.    Driving Offenses

i.    Suspended License

A conditional offer of employment was extended to Ivery Cross on July 21, 2008. (Dkt. #92, Exhibit F). Cross accepted the offer the same day. (Dkt. #92, Exhibit F). On September 29, 2008, Cross' driver's license was suspended. (Dkt. #92, Exhibit S at PageID# 1202). It is not clear, but the suspension appears to have been the result of an accumulation of points earned from a series of moving

---

[8] It is not clear whether Cross actually repaid the entire debt owed to Singh. Defendants, citing to Huff's deposition testimony, assert that Huff "verified the payments were made." (Dkt. #92 at PageID# 878). However, a review of Huff's testimony reveals no such assertion. Plaintiff cites to the investigation report which merely demonstrates that Cross had not yet repaid the money as of the date the investigation report was completed. (Dkt. #92, Exhibit L). The parties have not cited to or identified any definitive evidence establishing whether Cross ever repaid the money in question.

vehicle infractions.  Cross' driving privileges were reinstated on October 7, 2008.  (Dkt. #92, Exhibit S at PageID# 1202).  The basis for this reinstatement is also not clear.

       ii.      Operating a Patrol Vehicle without a Valid Driver's License

On February 15, 2010, the City of Niles Police Department received a report from the Michigan State Police regarding Ivery Cross.  (Dkt. #92, Exhibit S at PageID# 1188, 1195).  According to this report, Cross was observed by a Michigan State Police Trooper traveling 70 mph in a 40 mph zone and then traveling 81 mph in a 50 mph zone.  (Dkt. #92, Exhibit S at PageID# 1195).  The trooper gave Cross a warning, but subsequently determined that Cross' driver's license was not presently valid due to a failure by Cross to pay a "reinstatement fee."  (Dkt. #92, Exhibit S at PageID# 1195).

An investigation of this matter by the City of Niles Police Department revealed that Cross had "operated a patrol car with a suspended license" from December 23, 2009, through January 29, 2010, and "operated a patrol car on an invalid driver's license" from January 29, 2010, through February 16, 2010.  (Dkt. #92, Exhibit S at PageID# 1188).  As a result of this investigation, Cross was suspended for five days without pay.  (Dkt. #92, Exhibit S at PageID# 1189).  It was further noted that had a "civilian" committed the offenses in question, he or she "would have received citations or faced possible arrest."  (Dkt. #92, Exhibit S at PageID# 1189).  This suspension was not immediately imposed, however, but was instead scheduled to be imposed from March 24, 2011, through March 28, 2011.  (Dkt. #92, Exhibit U at PageID# 1221).  This suspension was never imposed because Cross committed the acts giving rise to this matter prior thereto.

iii.     Damaging a Patrol Vehicle and Lying about Such

On January 23, 2011, Ivery Cross, "while on duty and operating a Niles City Police patrol vehicle," Cross struck a utility pole, "causing the patrol vehicle to be a total loss."  (Dkt. #92, Exhibit U at PageID# 1222).  Cross asserted that "he lost control of his patrol vehicle while attempting to avoid striking a deer which he believed may walk into his path."  (Dkt. #92, Exhibit U at PageID# 1222).  An investigation into the incident, however, revealed that Cross was untruthful to investigators.  (Dkt. #92, Exhibit U at PageID# 1222).  It was determined that the accident was instead caused by "inappropriate driving (i.e. excessive speed, and 'horseplay')."  (Dkt. #92, Exhibit U at PageID# 1222).  Cross was given yet another five day suspension without pay.  It is not clear when this suspension was scheduled to occur or if Cross ever served such.

Defendants assert that they are entitled to summary judgment because none of the evidence discussed above could reasonably have put them on notice that Ivery Cross would later sexually assault Plaintiff.  The Court discerns two significant shortcomings with Defendant's argument.  First, the Court finds Defendants' characterization of Cross' conduct to be unreasonably narrow.  While there was arguably a sexual aspect to Cross' conduct, such is more aptly characterized as a disregard for the rights and dignity of others by an individual who had ample reason to believe that rules and standards simply did not apply to him.  So characterized, Cross' mistreatment of Plaintiff in the bathroom was not a bit unpredictable.  Second, Defendants' argument overlooks the fact that Plaintiff has also alleged a violation of his Fourth Amendment rights.  The evidence discussed above much more strongly supports the conclusion that Defendants knew or should have known that Cross would conduct an illegal strip search of Plaintiff.

In sum, while none of these alleged customs or policies may be, by itself, sufficient to impose municipal liability in this matter, considered together this evidence is more than sufficient for a reasonable person to conclude that the City of Niles was deliberately indifferent to Plaintiff and caused the injuries he suffered at the hands of Ivery Cross.  Accordingly, the undersigned recommends that the motion for summary judgment filed by Defendant Huff, in his official capacity, and the City of Niles be denied as to Count III of Plaintiff's amended complaint.

C.      Ineffectual Grievance Policy

In Count IV of his amended complaint, Plaintiff alleges that the City of Niles employed a custom or policy of discouraging or ignoring citizen complaints asserted against Ivery Cross.  Plaintiff alleges that this policy evidences deliberate indifference to the risk that Cross would commit the unconstitutional acts alleged in this action.  Plaintiff's claim is based on the incidents involving Dave Singh and another involving Russell Frantz detailed above.

As noted above, Dave Singh's complaint was investigated and Plaintiff was directed to repay the money in question.  Likewise, while Russell Frantz may have experienced difficulty reporting his allegations against Ivery Cross, the record reveals that Frantz did, in fact, report his allegations to Captain Millen.  (Dkt. #92, Exhibit M at pages 63-65).  Moreover, an attempt to investigate the matter was made by officers as Frantz conceded.  (Dkt. #92, Exhibit M at pages 52-54).

While not cited by Plaintiff, Defendants have presented evidence of several other grievances which citizens were able to submit against Cross and which were investigated and acted upon.  (Dkt. #92, Exhibits R-T).  Plaintiff has demonstrated, at most, that on one occasion an individual, Russell Frantz, experienced difficulty reporting his allegations of wrongdoing against Ivery Cross.  This

isolated incident, however, falls well short of establishing the deliberate indifference necessary to prevail on this particular claim.  This is not to suggest that these particular incidents are irrelevant, however.  To the contrary, this evidence may very well be relevant in the context of Plaintiff's failure to supervise claims discussed above.  Standing alone, however, this evidence is insufficient to sustain a claim based upon municipal liability.  Accordingly, the undersigned recommends that Defendants' motion for summary judgment be granted as to Count IV of Plaintiff's amended complaint.

### D.      Inadequate Hiring Procedures

In Count V of his First Amended Complaint, Plaintiff asserts that Defendants Huff and the City of Niles "knew or should have known that Ivery Cross was unfit for performing the duties of a police officer and that he was likely to be reckless, violent and/or inflict the particular injury suffered by Plaintiff."  Plaintiff further asserts that Defendants endorsed or implemented a "formal or de facto policy or custom of failing to adequately screen, perform background checks, perform psychological evaluations or otherwise failing to adequately ensure that an applicant is fit for active police duty."  Plaintiff asserts that Defendants' failures in this regard caused him to suffer a violation of his constitutional rights.

A showing of "simple or even heightened negligence will not suffice" to prevail on this claim.  *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 407 (1997).  Instead, Plaintiff must demonstrate that the decision to employ Ivery Cross reflected deliberate indifference to the "known or obvious consequences" of such action.  *Id.*  To prevail, Plaintiff must do much more than demonstrate that the screening or assessment of Cross as a potential police officer was "inadequate."  *Id.* at 411. As the *Brown* Court observed:

> a finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong.

*Id.* at 412.

Plaintiff can make no such showing. In support of their motion, Defendants have submitted the following evidence. In March 2008, Ivery Cross submitted an application with the City of Niles seeking employment as a police officer. (Dkt. #92, Exhibit B). Contemporaneous with Cross' application, the City of Niles advertised an available position for a patrol officer. (Dkt. #92, Exhibit C). Six applicants were interviewed for this position. (Dkt. #92, Exhibit D at 15). As part of the applicant evaluation process, interviews were conducted of numerous individuals concerning Ivery Cross. (Dkt. #92, Exhibit G). With one exception, these individuals provided "positive" comments concerning Cross. (Dkt. #92, Exhibit G). The one exception concerned an individual who believed that Cross was racially biased. (Dkt. #92, Exhibit G). This negative allegation could not be substantiated. (Dkt. #92, Exhibit G). An investigation of Cross' criminal background revealed only numerous traffic offenses. (Dkt. #92, Exhibit G). A subsequent psychological evaluation was conducted the results of which led the examiner to conclude that Cross was "an excellent candidate for police officer." (Dkt. #92, Exhibit H).

Plaintiff has failed to identify any evidence contradicting or otherwise calling into question the evidence presented by Defendants. Moreover, while Plaintiff alleges in his complaint that Cross was known to have a history of reckless and violent behavior as well as a history of sexual misconduct and/or inappropriate sexual proclivities, Plaintiff has presented no evidence demonstrating such. In short, Plaintiff has failed to present any evidence from which a reasonable person could conclude that Cross, based on his background, was likely to commit the wrongful acts herein alleged.

Accordingly, the undersigned recommends that Defendants' motion for summary judgment be granted as to this claim.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment, (Dkt. #91), be **granted in part and denied in part**. Specifically, the undersigned recommends that: (1) Defendant Huff be granted summary judgment as to Plaintiff's personal capacity claims; (2) Defendants Huff and the City of Niles be granted summary judgment as to Counts IV and V of Plaintiff's amended complaint; (3) Plaintiff's failure to train claims, asserted in Count III of his amended complaint, be dismissed; (4) Plaintiff's failure to supervise claims, asserted in Count III of his amended complaint, go forward against Defendant Huff, in his official capacity, and the City of Niles; and (5) Plaintiff be permitted to amend his complaint to assert a claim that the strip search in question violated his Fourth Amendment rights.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date:  January 21, 2016

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge